**UNITED STATES of America,
Plaintiff,**

v.

**Harold Edward BURTON, Defendant.
No. 23654-4.**

United States District Court,
W. D. Missouri, W. D.
April 3, 1972.

Edward W. Mullen, Kansas City, Mo., for plaintiff.

J. Whitfield Moody, First Asst. U. S. Atty., Kansas City, Mo., for defendant.

### MEMORANDUM AND ORDER OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

ELMO B. HUNTER, District Judge.

Defendant herein has been charged by a two count indictment. Count I charges the offense of possession of a firearm traveling in and affecting interstate commerce in violation of Section 1202(a) (1), Title 18 Appendix, United States Code. Count II charges the offense of knowingly delivering a firearm and ammunition therefor to a common carrier for transportation and shipment in interstate commerce without first having given notice to the carrier, in violation of Sections 922(e) and 924(a), Title 18, United States Code. This matter is presently before the Court upon defendant's motion to suppress certain evidence which he contends was obtained by means of an illegal search conducted by an employee of Braniff Airlines and a Federal Marshal on January 11, 1972.

A full evidentiary hearing was held on March 17, 1972 to consider all issues raised on defendant's motion to suppress.

The evidence adduced at the hearing upon defendant's motion reveals the following:

On or about January 11, 1972, at approximately 6:00 p. m., defendant, Harold Edward Burton, hurriedly entered the terminal building at Kansas City Municipal Airport, approached the Braniff Airlines ticket counter and stated that he had a reservation on Braniff flight No. 250 which was scheduled to depart for Minneapolis, Minnesota at 6:00 p. m. that evening. Mr. Lloyd Webster, the Braniff Airline ticket supervisor on duty at that time, informed defendant that flight No. 250 was then departing, and confirmed a reservation for defendant on flight No. 134 which was to depart Kansas City for Minneapolis at 7:50 p. m. that evening. Several minutes later the defendant purchased a ticket for flight No. 134 and delivered two suitcases to another ticket agent then on duty. Because one of the suitcases was falling open, the agent requested the agent supervisor, Mr. Webster, to obtain some twine to secure it. Mr. Webster obtained the twine, and with the aid of the other agent, wrapped the unsecure suitcase. At this time, Mr. Webster picked up both of defendant's suitcases for transportation to the baggage assembly area. Mr. Webster testified that at this time he noticed that one of the suitcases (the one which had not required twine) was heavy and that the weight was distributed unevenly so as to make the suitcase top-heavy and swing in an unusual manner. He also testified that the twine-wrapped suitcase was unusually light in weight. Mr. Webster stated that he had been a ticket agent for approximately 25 years, and that one of his duties was to notice baggage in which the weight was distributed in a strange or unusual manner. He further stated that from his experience in carrying a countless number of bags, his suspicions are aroused when a passenger checks two bags of comparable size, one of which is light and the other heavy with uneven weight distribution.

Evidence was presented at the hearing that Mr. Webster was of the opinion that the defendant approximated a Behavioral Pattern Profile which had been established to reduce airline highjackings and bombings by identifying behavioral patterns of potential participants in this type of criminal activity. Mr. Webster testified that the defendant, in his opinion, fit the highjacker profile, and that this in part caused him to open and search the defendant's luggage. However, Mr. Webster's testimony indicated that he relied primarily on his suspicions aroused by the unusual feel of defendant's luggage as described above.

Because the suitcase aroused his suspicion, Mr. Webster did not deliver it to the baggage assembly area but instead contacted the "bag man," Mr. Rozier. Together they proceeded to the "bag room," and with the aid of airline skeleton keys opened the defendant's suitcase at approximately 6:20 p. m. Mr. Webster testified that no one other than he and Mr. Rozier were present when the suitcase was opened, and that no one had requested that it be opened. A search of the suitcase which had originally aroused Mr. Webster's suspicion because of uneven weight distribution revealed several items of light clothing, a pair of boots, and a loaded .357 magnum Smith and Wesson revolver. The revolver was found in the bottom pocket of the center cloth bag divider.

Immediately after discovering the revolver, Mr. Webster contacted an Airport Security Officer, a peace officer employed by the city of Kansas City, Missouri. The Security Officer paged United States Marshal Lehmann who was on duty at the Airport terminal. Marshal Lehmann testified that he was paged at approximately 6:40 p. m. and at that time he proceeded to the bag room and observed the open suitcase with the handle of a revolver protruding

from the center divider pocket. He instructed the airline employees to hold the bag and with the aid of Mr. Webster determined from the claim check attached to the bag that it was scheduled to go out on flight No. 134 to Minneapolis.

Later in the evening when the defendant and two companions approached the boarding gate for flight No. 134, Mr. Webster, recognizing defendant from his recollection of defendant's earlier flight inquiry, pointed out defendant to Marshal Lehmann. Marshall Lehmann approached the defendant and his two companions, stopped them and executed a pat-down of their outer clothing for weapons, and discovering no weapons released the defendant's companions. He then took defendant into custody, escorted him to the airport office where the bag was located and informed defendant that he was under arrest. Marshal Lehmann warned the defendant of his Constitutional rights and then proceeded to search his person. The search disclosed a baggage claim check, having a number which matched the number of the tag attached to the suitcase in which the firearm had been found, and a key that fit the lock on the same suitcase. Marshal Lehmann then seized the revolver from the defendant's bag, examined it and determined it to be fully loaded with six rounds of ammunition, two of which were the armor piercing type.

Defendant contends that the search and seizure of his luggage was conducted by the airline employees pursuant to the directives of the Federal Aviation Agency and under the coercion of Section 922(f), Title 18, United States Code, and therefore the search was tantamount to a search by the United States Government conducted without a warrant and not incidental to any contemporaneous arrest. Defendant relies on Corngold v. United States, 367 F.2d 1 (9th Cir. 1966) in support of this contention.

This Court is of the opinion that *Corngold* is not controlling in this case. *Corngold* involved a situation in which customs' agents followed a shipper to the airport and requested the carrier to open some packages after the shipper had left. In that case the airline employee testified that he opened the packages only because the government agents asked him to do so, and the government agents joined actively in the search. In the instant case, Mr. Webster, the Braniff agent supervisor, testified that he first suspected the defendant and conducted the search without the aid of any government officer or agent. Mr. Webster was not requested to open the defendant's luggage by any officer, federal or state, and there were no law enforcement officers present when the luggage was searched. Rather than the government agents instigating inspection or participating therein, Mr. Webster called them in *after* he had discovered that the defendant had delivered a loaded firearm to the airline for transportation.

The instant case is similar to Gold v. United States, 378 F.2d 588 (9th Cir. 1967), wherein an airline employee's search was upheld as not being so connected with government participation or influence as to be characterized as a search by government agents. In *Gold*, evidence obtained as a result of a warrantless search by an airline employee was held to be admissible in a subsequent criminal prosecution. In that case the Ninth Circuit Court of Appeals stated:

> We conclude that the initial search of the packages by the airline's employee was not a federal search, but was an independent investigation by the carrier for its own purposes. Unlike *Corngold*, here the agents did not request that the package be opened. . . . What did follow was the discretionary action of the airline's manager and was not so connected with government participation or influence as to be fairly characterized, as was the search in *Corngold*, as "a federal search cast in the form of a carrier inspection."

■ Defendant further contends that even though the instant case is not analogous to *Corngold*, the airline employees were acting in the capacity of government agents because of the coercion imposed by Section 922(f), Title 18, United States Code and by other directives of the Federal Aviation Agency. In support of this contention, the defendant relies solely upon the case of United States v. Lopez, 328 F.Supp. 1077 (E.D. N.Y.1971). A close reading of *Lopez* has failed to convince this Court that the case supports this proposition. In *Lopez* the search was conducted by Federal agents, not by airline employees, and thus the case did not rest on a determination that airline employees were acting in the capacity of federal agents. Defendant has not brought to the Court's attention any FAA regulations which were in effect at the time of the events now in issue which in any way direct airlines to search or screen passengers or their baggage,[1] and this Court has been unable to discover any such directive or regulation.[2] Section 922(f), Title 18, United States Code can in no way be read to impose a requirement on airline employees to conduct baggage searches and thereby convert them into agents of the Federal Government.[3]

In view of the recent wave of airline highjackings and bombings, it is reasonable to conclude that Mr. Webster was serving the purposes of his employer in investigating a suitcase which he, relying on his twenty-five years of experience and recently developed behavioral pattern profiles, believed to contain unusual and perhaps dangerous articles. Mr. Webster testified that there were approximately forty persons scheduled to board flight No. 134. Certainly the airline had a responsibility for the protection of the lives and safety of these passengers, and an interest in protecting its financial investment in the plane and equipment.

In light of the above, this Court finds that the search of the defendant's suitcase conducted by Mr. Webster was not so connected with government participation or influence as to be characterized as a federal search cast in the form of a carrier inspection, but rather the search was an independent investigation by the carrier for its own purposes. See, Gold v. United States, 378 F.2d 588 (9th Cir. 1967); Wolf Low v. United States, 391 F.2d 61 (9th Cir. 1968); Clayton v. United States, 413 F.2d 297 (9th Cir. 1969); United States v. Pryba, 312 F. Supp. 466 (D.C.D.C.1970); United States v. Averell, 296 F.Supp. 1004 (E. D.N.Y.1969).

1. 14 C.F.R. § 121.585, is the only FAA Regulation which was in effect on January 11, 1972 which remotely bears on this issue. It provides:

No person may, while aboeard an airplane being operated by an air carrier in air transportation, carry on or about his person a deadly or dangerous weapon, either concealed or unconcealed. This paragraph does not apply to—

(a) Officials or employees of a municipality or a State, or of the United States, who are authorized to carry arms; and

(b) Crewmembers and other persons authorized by the air carrier to carry arms.

2. FAA Security Regulations which became effective subsequent to the events in this case are not applicable, and therefore this Court does not rule on their validity or effect. See, 14 C.F.R. § 121.-538, 37 Federal Register No. 22, p. 2501 (Feb. 2, 1972) effective February 2, 1972, and later amendments thereto in 37 Federal Register No. 45, p. 4905 (March 7, 1972) and 37 Federal Register No. 49, p. 5254 (March 11, 1972).

3. 18 U.S.C. § 922(f) provides:

It shall be unlawful for any common or contract carrier to transport or deliver in interstate or foreign commerce any firearm or ammunition with knowledge or reasonable cause to believe that the shipment, transportation, or receipt thereof would be in violation of the provisions of this chapter.

■ The 4th Amendment to the United States Constitution restricts only the sovereign, and therefore the exclusionary rule does not apply to evidence secured by private persons without governmental participation, Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); United States v. Goldberg, 330 F.2d 30 (3rd Cir. 1964); United States v. Ashby, 245 F.2d 684 (5th Cir. 1957); Watson v. United States, 391 F.2d 927 (5th Cir. 1968); cert. den. 393 U.S. 985, 89 S.Ct. 459, 21 L.Ed.2d 446 (1968).

■ The conduct of the airline employee in turning over to the Government the fruits of its search of defendant's luggage and the later use of this evidence by the government agent in establishing probable cause for the defendant's arrest fits within the doctrine of Burdeau v. McDowell, supra. See also, Remmer v. United States, 205 F.2d 277 (9th Cir. 1953); Barnes v. United States, 373 F.2d 517 (5th Cir. 1967). Once the government agent had received information from the airline that the defendant had delivered a firearm to the airline for interstate transportation, and after having substantiated this information by viewing the revolver, he had probable cause to arrest defendant and could do so without first obtaining a warrant for his arrest. See, Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Mueller v. Powell, 203 F.2d 797 (8th Cir. 1953); see also, Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Thereafter the evidence obtained from the search of the defendant's person by Marshal Lehmann was obtained incident to a valid arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

Accordingly, for the reasons stated herein above, defendant's motion to suppress is hereby denied.

It is so ordered.