Argued June 18, affirmed July 16, petition for rehearing denied
August 23, petition for review denied November 13, 1973

STATE OF OREGON, *Respondent, v.*
JERRY BLACKSHEAR (No. C-72-09-2826),
*Appellant.*
511 P2d 1272

*J. Reynolds Barnes,* Portland, argued the cause for appellant. With him on the brief were Sherwood, Barnes, O'Dell & Laman, Portland.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

Defendant appeals from conviction by the court of criminal activity in drugs: possession of heroin (ORS 167.207). The only assignment of error is that defendant's motion to suppress the evidence should have been allowed.

The search and seizure of heroin challenged by defendant's motion occurred at the Portland International Airport in an airline freight room where a customer service agent searched clothes taken from luggage which was to have been shipped by defendant from Portland to Beaumont, Texas. Defendant and

two other negro men had brought five pieces of luggage to the freight office for shipment. The agent testified that defendant declared the value of the personal possessions in the luggage at $5,000, which was the highest declared value for that class of property that the agent had experienced during several years in such work and hundreds of similar shipments.

The agent testified that when the defendant signed the shipping invoice he hesitated, and started as though he were going to sign a different name, and then signed the name "Paul Blackshear." The agent had knowledge of a notice that airport police had given to all airlines alerting them to the fact that negro persons, particularly two negro females, were suspected of recently shipping stolen clothing to other cities, particularly Los Angeles, from the Portland airport. The defendant was dressed in a "T" shirt and "old" levis but was wearing two large diamond rings. One of the suitcases would not lock and the defendant asked the agent to bind it additionally.

The above-related factors were testified to by the agent as causing him to be suspicious about the contents of the luggage. He testified he called his supervisor to be a witness to his opening the luggage to examine its contents. He said:

> "The company policy is if we have a suspect shipment we should first get a supervisor or another witness before we open any suspect luggage."

He also testified:

> "Q   And do you know of your own knowledge why that [it] is that you inspect shipments?
>
> "A   The main reason for Continental Airlines is they had a complete aircraft go down in Kansas City because of a bomb about—I believe it was

about eight or ten years ago. This is a federal regulation."

The supervisor was busy and as a result the agent called the airport police office to have an officer come to act as a witness. The officer did come. He testified that he considered himself as an "observer" only and that "* * * I didn't say yes, or I didn't say, 'No, don't open it.' " The agent opened the first suitcase and while examining clothes therein found what appeared to be narcotics in the pocket of trousers. The search was forthwith stopped and narcotics officers were called, resulting in the ultimate arrest of defendant for the instant charge.

When the motion was argued before the trial court defendant's counsel urged that *Corngold v. United States,* 367 F2d 1 (9th Cir 1966), was in point and should control the decision in this case. The prosecution argued that *Gold v. United States,* 378 F2d 588 (9th Cir 1967), was more in point and that it should control. The court considered both cases and agreed with the prosecution. In *Corngold* federal custom agents had the defendant and two others under observation and saw them leave suspect packages at a TWA cargo loading platform. They told the airline agents that the packages were suspect, asked them to open them and helped with the opening of one. They alone proceeded with examining the contents, which were contraband, the presence of which resulted in defendant's arrest. In that case the Ninth Circuit Court of Appeals said that "* * * the TWA employee participated in the search solely to serve the purposes of the government * * *," and held that the warrantless search by the government officers was illegal. 367 F2d at 5.

In *Gold v. United States,* supra, FBI agents had defendants under surveillance as suspects for shipping obscene film. They saw defendants deposit packages at an airline freight office. After the defendants left, the FBI agents informed airline employes that they had reason to believe the waybill for the packages was inaccurate and that they were suspicious. The FBI agents made no effort to inspect the packages. After they left, the manager for the airline decided to investigate further. With one of his supervisors he opened one of the packages and looked at the film he found therein. He then notified the same FBI agents who returned and viewed the films with a projector, after which they obtained a warrant and seized the shipment. The Ninth Circuit Court of Appeals distinguished *Gold* from *Corngold* principally because the government agents left the premises and did not participate in the original inspection of the packages. The court said that the initial search

"* * * was not a federal search, but was an independent investigation by the carrier for its own purposes. * * * The [FBI] agents had the same right as any citizen to point out what they suspected to be a mislabeled shipping document, and they exercised no control over what followed * * *.

"* * * [T]he carrier had sufficient reasons of its own for pursuing the investigation. The manager testified that packages suspected of containing something other than what was described on the air waybill were sometimes opened so that the airline would know what was being carried on its airplanes, and so that it could assess proper charges * * *." 378 F2d 591.

The trial court did not have called to its at-

tention another case with similar facts which has been cited to us in the state's brief on appeal. This is *United States v. Burton,* 341 F Supp 302 (WD Mo 1972). In *Burton* the defendant checked two pieces of luggage into the airline office. The agent noticed peculiarities about the weight of the luggage sufficient to arouse his suspicions. In the presence of other employes as witnesses he opened one suspect suitcase and found therein a fully loaded .357 magnum gun. He immediately called officers which resulted in defendant's arrest.

The United States District Court for Missouri considered both the *Gold* and *Corngold* cases and concluded that *Gold* was more in point and upheld the reasonableness of the search. We come to a similar conclusion in the case at bar. There was much more reason for opening the luggage on the part of the agent than the simple alerting of all airline clerks concerning shipment of stolen clothing. We think that the excessive value placed upon the luggage by the defendant and his suspicious actions were sufficient reasons for inspection. It is apparent that the agent would have inspected the luggage regardless of the presence or availability of the police officer. The trial court must have found that the officer had no part in the search of the luggage except observing it. This finding has support in the evidence, and it removes the search from the strict application of the United States Constitution Fourth Amendment proscription of unreasonable searches and seizures by police officers. What the United States Supreme Court had to say in *Coolidge v. New Hampshire,* 403 US 443, 466, 91 S Ct 2022, 29 L Ed 2d 564 (1971), is apropos of the instant situation:

"What the 'plain view' cases have in common

is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. * * * Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them * * *."

The police officer in the instant case knew nothing of contraband when he was called to witness the opening of the luggage. His view of the contraband as he witnessed the opening of the luggage thus became inadvertent as the term is used in *Coolidge*. We conclude that the trial court's ruling upon the motion to suppress was proper.

Affirmed.