**UNITED STATES of America,**
**Plaintiff,**

v.

**Michael Dwight KRELL et al.,**
**Defendants.**

**Crim. No. A74–131.**

United States District Court,
D. Alaska.

Feb. 19, 1975.

R. Samuel Pestinger, Asst. U. S. Atty., Anchorage, Alaska, for plaintiff.

Brian Shortell, of Bookman, Bryner & Shortell, Anchorage, Alaska, for defendant Krell.

Hal R. Horton, of Birch, Jermain, Horton & Bittner, Anchorage, Alaska, for defendant Ungerecht.

## OPINION

PLUMMER, Senior District Judge.

The matter under consideration is a suppression motion under Fed.R.Crim.P. 41(e). The defendants, Michael Krell and Kay and Larry Ungerecht, have been charged with possession of and possession with intent to distribute various controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 844. A hearing has been held at which the relevant facts have been developed.

On June 15, 1974, at the Portland, Oregon, International Airport three unidentified individuals delivered a package to a Northwest Orient Airlines employee, Herb Wagoner, for shipment to Anchorage, Alaska. They told him that the package contained stereo equipment and books. Due to the light weight of the package and the long-haired appearance of the shippers both Wagoner and his fellow employee, Rockwood, became suspicious. Several weeks earlier law enforcement agents had alerted Rockwood to the problem of airline drug shipments, and shown him pictures of persons suspected of using this method to transport drugs. The pictures did not resemble any of the shippers. Although Rockwood thought the package should be opened, Wagoner was unwilling to do so. Instead, they called and informed the airport police of their suspicions. When the police arrived they told the airline employees that they, as police officers, could not open the package without a warrant, but that the airline employees had the right to open it to check for mislabeling. The court finds that at this time probable cause for a search warrant did not exist. Rockwood was previously aware that the airline had the right to open the package. At Rockwood's urging Wagoner opened the package with the police officers only a few feet away. Wagoner pulled a clear glass jar out of the box which contained marijuana rather than stereo equipment or books. The officers looked at the other containers in the box, and partly opened the ones whose contents could not be determined from the outside. The contraband, marijuana and cocaine, was marked for identification, repacked and shipped to its destination. Members of the Anchorage Metro Unit and Drug Enforcement Administration were informed of the package, and they kept it under surveillance after it arrived. On June 16, 1974, the package was claimed by defendant Krell, and placed in the trunk of Larry Ungerecht's car with his assistance. Kay Ungerecht was also an occupant of the car. Larry Ungerecht drove his car away with the government agents following in three other cars. It appeared to the officers that defendants realized they were under surveillance because of the erratic change of speed of the vehicle. Defendants' car proceeded directly to and stopped at the Ungerecht's residence. The first government agent to arrive observed Krell carrying a package to a woodpile and returning without it. Both Krell and Larry Ungerecht denied any knowledge of the package when asked where it was. The officers arrested both men and retrieved the package from behind the woodpile. Kay Ungerecht was told to place her purse at her feet. While the attention

of the officers was distracted she placed it against the right front tire and partially under the car she was standing next to. Because of her extreme nervousness an officer picked up the purse and glanced into it. He observed contraband. The purse was then searched more thoroughly, revealing more drugs. Kay Ungerecht has only been charged on the basis of the drugs contained in her purse. A loaded firearm was subsequently found in the car. The package was opened at the police station.

On these facts the defendants object to the search at the Portland airport, the retrieval of the package from the woodpile, the opening of the package without a warrant, and the search of Kay Ungerecht's purse. The court considers each of these objections separately.

 It is well established that a private search is not within the Fourth Amendment, but that if the government agents instigate it or participate in it the Amendment applies. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L. Ed. 520 (1927); Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L. Ed. 1819 (1949). It is also true that if the only purpose of a private search is to further a government investigation, it is subject to the Amendment. Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293 (1927); Corngold v. United States, 367 F.2d 1 (9th Cir. 1966). The government instigation of the search and the purpose of the private party in conducting the search are closely related issues, and will be discussed together. The other issue, the extent of the government participation, will be discussed first.

 The mere presence of a government officer at a private search of a package by an airline employee on airline property does not constitute sufficient governmental participation to taint the otherwise private search of the employee. This has been assumed by the defense counsel in one Ninth Circuit case. Wolf Low v. United States, 391 F.2d 61, 62 n. 1 (9th Cir. 1968), cert. den. 393 U.S. 849, 89 S.Ct. 136, 21 L. Ed.2d 119 (1968). Several cases from other circuits have held that such presence does not taint the search. United States v. Johnson, 451 F.2d 1321 (4th Cir. 1971) cert. den. 405 U.S. 1018, 92 S.Ct. 1298, 31 L.Ed.2d 480 (1972); United States v. Averell, 296 F.Supp. 1004 (S.D.N.Y.1969); United States v. Capra, 372 F.Supp. 603 (S.D.N.Y.1973). And language in United States v. Pechac, 54 F.R.D. 187 (D.Ariz.1972), indicates that to taint it the government agent must be acting as more than a mere observer. While *Averell* refused to follow a leading Ninth Circuit case, *Corngold, supra,* it also distinguished it. 296 F.Supp. 1010. And although Corngold's language could be interpreted as holding that *any* participation under color of federal or state law taints the search, it has not been so interpreted. In Stonehill v. United States, 405 F.2d 738, 743 (9th Cir. 1968), the majority held that the governmental participation must be so substantial as to create a joint venture with the non-governmental party. Compare Judge Browning's dissent, 405 F.2d 748, 749, n. 10. *Corngold* was distinguished by the majority because "the airline employee would not have conducted the search but for the insistence of the Federal agent, and even then he did so reluctantly." 405 F.2d 745. In fact, in *Stonehill* federal agents were at the scene of the search. 405 F. 2d 750 n. 19, 20 (Judge Browning dissenting). Therefore *Corngold* does not support the defendants on the issue of participation. Nor do such cases as Gold v. United States, 378 F.2d 588 (9th Cir. 1967), and United States v. Cangiano, 464 F.2d 320 (2nd Cir. 1972), which contain language pointing to the absence of government agents at the place of the private search. Such language is a description of fact rather than the statement of a requirement. And in this type of an inquiry, each case must turn on its own facts. Byars v.

United States, 273 U.S. 28, 33, 47 S.Ct. 248, 71 L.Ed. 520 (1927).

■ The court finds that this was not sufficient participation to taint the search. The inspection of the other containers in the box is not inconsistent with this because after the jar came into plain view the officers could seize the box and its contents. United States v. Tripp, 468 F.2d 569 (9th Cir. 1972) cert. den. 410 U.S. 910, 93 S.Ct. 965, 35 L. Ed.2d 272 (1973); Wolf Low v. United States, 391 F.2d 61 (9th Cir. 1968) cert. den. 393 U.S. 849, 89 S.Ct. 136, 21 L. Ed.2d 119 (1968); United States v. Ogden, 485 F.2d 536 (9th Cir. 1973).

■■ However, this does not get the government out of the woods. Remaining are the questions of the purpose of the private search and the government's instigation of it. In Coolidge v. New Hampshire, 403 U.S. 443, 487, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the court stated the test as being whether the private person acted as the instrument or the agent of the State. The motive of the private party was an important consideration. There the wife gave evidence to the police to exculpate rather than incriminate her husband. Here the situation is the contrary. Further, the government may not encourage conduct by private persons that the government itself may not do. United States v. Davis, 482 F.2d 893, 904 (9th Cir. 1973). And even if the government does not encourage the search, if an airline agent searches solely for the purpose of aiding in law enforcement, the search is illegal. *Gambino, supra; Corngold, supra;* United States v. Issod, 370 F.Supp. 1110 (E.D.Wis.1974). The facts in *Issod* are similar to those here. There the airline agent became suspicious and called the Bureau of Narcotics and Dangerous Drugs (BNDD). After the BNDD agent arrived the employee opened the trunk. The court inferred from the sequence of these events that the only purpose of the search was to further a government investigation. This court would be reluctant to make that infer-

ence if there were no other facts in the record. Here, however, two weeks earlier police had alerted Rockwood to the problem of drug shipping. More importantly though, Rockwood testified that the only purpose of his search was discovery of drugs to be turned over to law enforcement officers. Under cross examination by Mr. Shortell, Rockwood made the following statements:

"Q Did you think there was a possibility that there were drugs in there?

A Yes, sir.

Q Is that the reason why you searched the package or why you wanted to search the package?

A That's correct.

Q And you wanted to turn the contents of the package if they were drugs over to law enforcement officers?

A That's correct.

Q And that was your only reason for searching the package, right?

A Not the only reason. As I said, it could have been drugs.

Q That was your only—

A Or—At the particular time, yes.

Q It was the only reason why you searched the package, right?

A Yes.

&ast; &ast; &ast; &ast; &ast; &ast;

Q With all the circumstances combined, the long hair of the party sending, the circumstances of the return address and the stereo gear, that tipped you off, did it not, that these were drugs?

A Yes, I became suspicious because of that, yes.

Q And that is what you were looking for when you went into that package?

A That's correct.

Q And that is all you wanted to do was find—that is what your purpose was, the only purpose was to find the drugs and turn them over to the police, if they were drugs?

A That's correct."

Since the only purpose of the search was to turn drugs over to the police it is

within the Fourth Amendment. Accordingly, the evidence seized at the Portland Airport must be suppressed. Of course, the fruit of this illegal action must also be suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

 Although not necessary to the decision, absent the initial unlawful search, the court sees no problem with retrieving the package from behind the woodpile, as Krell was attempting to conceal evidence. Gaines v. Craven, 448 F.2d 1236 (9th Cir. 1971); United States v. Bradley, 455 F.2d 1181 (1st Cir. 1972); United States v. Blake, 484 F.2d 50 (8th Cir. 1973). Nor were the agents required to get a warrant to open the package by Coolidge v. New Hampshire, *supra.* United States v. Murray, 492 F.2d 178, 188 (9th Cir. 1973); United States v. Mehciz, 437 F.2d 145 (9th Cir. 1971).

The justification for the search of Kay Ungerecht's purse is unclear. At various times the government has argued for a search incident to arrest, a weapons search or plain view. As a search incident to arrest, it must fail as the fruit of poisonous tree. *Wong Sun, supra.* Under the other two arguments Kay Ungerecht is not charged with possession of the drugs in the box, so an issue of standing arises as to her right to assert the illegal search of it. Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); United States v. Wilson, 488 F.2d 400 (5th Cir. 1973). But this need not be decided. The government has the burden of proof, and it has not met it in showing either of the other two justifications it urges. United States v. Jeffers, 342 U.S. 48, 51, 72 S. Ct. 93, 96 L.Ed. 59 (1951). The government has shifted from one justification to another, raising serious doubt as to all of them. The officer who conducted the "weapons search" at one time turned his back on Kay Ungerecht. At the magistrate's hearing little reference was made to dangerousness. At trial the officer concluded that he only knew that

something was the matter with the purse. Plain view is equally unsupportable as it was the officer's own conduct which revealed the contents of the purse. The search of the purse was therefore illegal, and the evidence must be suppressed.

Defendants' motions to suppress are granted. Any appeal by plaintiff pursuant to 18 U.S.C.A. § 3731 shall be taken within 30 days and shall be diligently prosecuted. Further proceedings in this court are hereby stayed until otherwise ordered.

It is so ordered.