UNITED STATES of America, Plaintiff,

v.

Thurman REED, Jr., Defendant.

No. A92–104 Crim.

United States District Court,
D. Alaska.

Nov. 27, 1992.

---

Wevley Wm. Shea, U.S. Atty., Mark A. Rosenbaum, Asst. U.S. Atty., Anchorage, AK, for U.S.

Lawrence A. Pederson, Paul J. Nangle & Associates, Anchorage, AK, for defendant.

## ORDER

SINGLETON, District Judge.

Thurman Reed, Jr., has filed three motions: One motion to sever counts of the indictment for trial, at Docket No. 37; and two separate motions to suppress the fruits of searches of hotel rooms he had rented, at Docket Nos. 21 and 38. With respect to the hotel room searches, each search was made pursuant to a separate search warrant. In each case, Reed argues that the warrant was invalid because the issuing magistrate relied in part on police observations gained through earlier illegal warrantless searches. The initial filings in support of and in opposition to the motions did not disclose any disputed issues of material fact. Consequently, no evidentiary hearing was required. *See Center Art Galleries–Hawaii, Inc. v. United States,* 875 F.2d 747, 754 (9th Cir.1989); *United States v. Batiste,* 868 F.2d 1089, 1091 (9th Cir.1989). Nevertheless, an evidentiary hearing was held, and I have obtained and listened to the two cassettes of that hearing. *See United States v. Remsing,* 874 F.2d 614 (9th Cir.1989). Judge Roberts recommends that both motions be denied (Docket Nos. 49 and 58). I have reviewed his findings of fact *de novo* and find them to be accurate, and I accept his determinations regarding the credibility of witnesses. *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980), *reh'g denied,* 448 U.S. 916, 101 S.Ct. 36, 65 L.Ed.2d 1179. I also have reviewed the record *de novo* and have exercised my independent judgment in resolving the disputes between the parties.

Reed has also made a motion to sever his trial of the two incidents (Docket No. 37), which I will separately address.

### A. *The Barratt Inn Search.*

 In January of 1992, Thurman Reed checked into the Barratt Inn in Anchorage Alaska, rented a room and obtained the key. He was paying for the room on a daily basis and was in possession of the room on January 24, 1992. Barratt Inn management had received an anonymous call indicating that drug trafficking was taking place out of the room rented to Reed. In addition, hotel management had learned from past experience that the circumstances of a guest requesting that a room not be serviced, many telephone calls being placed to the room, and extensive traffic to the guest's room indicated that criminal activity was taking place; and all of these circumstances were observed in connection with Reed's occupancy. Lewis Watson, the assistant general manager at the Barratt Inn, became concerned and decided to visit the room. Out of concern for his safety, Watson telephoned the police, shared his suspicions and requested that an officer stand by when he visited the room. Two officers were present. While the search warrant was allegedly based only upon Watson's observations, it is possible that at least one of the officers who entered ten feet into the room also made observations. Watson definitely opened a briefcase, which he found, and showed the officers a pistol inside. A search warrant resulted. Since private searches are not within the protection of the Fourth Amendment, Reed has attempted to show that this search was somehow flawed by the officers' presence. He has the burden of showing that a private search was tainted by police involvement. *United States v. Gumerlock,* 590 F.2d 794 (9th Cir.1979) (*en banc*), *cert. denied,* 441 U.S. 948, 99 S.Ct. 2173, 60 L.Ed.2d 1052 (1979). Certainly, a hotel has a substantial interest in seeing that its premises are not used for illegal activity. This interest is independent of its interest in seeing that its property is not injured or destroyed by its guests. A unilateral desire by private citizens to aid in the enforcement of the law does not turn a private search into a Fourth Amendment search. *Gumerlock,* 590 F.2d at 800. *United States v. Sherwin,* 539 F.2d 1, 6 & n. 6 (9th Cir.1976) (*en banc*) (private carrier's desire to disassociate itself from criminal activity is private purpose); *accord, Schikora v. State,* 652 P.2d 473, 476 (Alaska App.1982) (same conclusion under Alaska law).[1] It is just as certain that hotel

---

1. There is dicta in a decision of this court suggesting that a private decision to enforce the law

employees suspecting drug activity might fear for their safety in entering a room, even one they believed was temporarily unoccupied, without a police officer present. In order to provide protection, it was not unreasonable for the officer to go ten feet into the room. I find that the observations made by the officer did not change the private search into a government search, and therefore did not violate Reed's Fourth Amendment rights.[2] Reed's reliance on *Corngold v. United States*, 367 F.2d 1 (9th Cir.1966), is misplaced. In that case, the airline employees opened defendant's suitcase solely because the government's agents asked them to do so. The airline had no interest in opening the package. *Id.* at 4–5. It is true that the court does opine, in dicta,[3] that, even if the search originated with the airline employees, it would be invalid if the government participated to any significant extent. *Id.* at 5–6. However, later cases make it clear that the mere presence of government agents and their observation of the private person's actions is not significant participation and does not turn a private search into a joint effort.[4] *See United States v.*

*Andrini*, 685 F.2d 1094, 1097–98 (9th Cir. 1982); *United States v. Gomez*, 614 F.2d 643 (9th Cir.1979); *United States v. Ogden*, 485 F.2d 536 (9th Cir.1973). In this case, I am satisfied that the officers did not do anything to change the private search into a government search; and consequently, their passive presence at the scene did not preclude them from supplying their observations to the magistrate in support of a search warrant.

### B. The Anchor Arms Search.

 As a result of the Barratt Inn search, the police obtained an arrest warrant for Reed. They then learned that he could be found in another hotel room at the Anchor Arms, where he apparently continued to traffic in cocaine. Officer Koch went to the room to serve the warrant and arrest Reed. Reed answered the door, saw Koch and closed the door; Koch burst in, seizing Reed and, in the course of an officer security sweep, making additional observations leading to the service of a second search warrant.

turns a private search into a public search. *See United States v. Krell*, 388 F.Supp. 1372, 1374 (D.Alaska 1975). This dictum was disapproved in *Gumerlock*, 590 F.2d at 800 and n. 19, which classed *Krell* with *Corngold v. United States*, 367 F.2d 1 (9th Cir.1966), as cases in which the police took a very active part in conducting the search.

2. Reed argues that, as a matter of fact, a housekeeper had been in the room the morning of January 24, 1992. He relies upon his testimony and hotel records. There is no evidence that this fact was communicated to officers Sponholtz or Koch and, if known to Watson, discouraged him from wishing to visit the room to assure that it was not being used for illegal purposes. While Watson may have been somewhat ambiguous regarding the precise private purpose that lead him to the room, it is undisputed that he entered the room under his own authority as assistant manager of the hotel, and not at the instigation of the police. Nor is it disputed that he wanted the police there for his protection, and did not rely upon the presence of an officer as authorization to enter the room.

3. The holding of the case is the application of the law to the specific facts before the court, while *dicta* involves expressions of opinion

about the way the law would be applied to facts not before the court. The Ninth Circuit does not consider itself bound by dicta in earlier cases. *See United States v. Henderson*, 961 F.2d 880, 882 (9th Cir.1992); *Ruff v. Sullivan*, 907 F.2d 915, 918 (9th Cir.1990); *United States v. Tsinnijinnie*, 601 F.2d 1035, 1038 (9th Cir.1979), *cert. denied*, 445 U.S. 966, 100 S.Ct. 1657, 64 L.Ed.2d 242 (1980).

4. It is therefore unnecessary to determine whether later decisions of the United States Supreme Court undermine the authority of the dicta in *Corngold. See United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980). *Walter* and *Jacobsen* stand for the proposition that government action must exceed the scope of the private search before the search becomes invalid. Therefore, slight government assistance to a private person conducting an otherwise private search should not invalidate the search, if the assistance was not substantial. *Cf. Gomez*, 614 F.2d at 645, (slight assistance by present police officer insufficient to establish joint action). *Stonehill v. United States*, 405 U.S. 738, 743 (9th Cir.1968), *cert. denied*, 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969) (substantial government involvement necessary to invoke similar "silver platter doctrine").

■ An arrest warrant provides limited authority to enter the arrestee's dwelling to make an arrest. *Payton v. New York,* 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980). It is undisputed that the police had a reasonable basis for believing that Reed was present in the hotel room, and, in fact, recognized him before entering the room. The police, therefore, had the right to enter. *United States v. Litteral,* 910 F.2d 547, 553–54 (9th Cir. 1990); *United States v. Hunt,* 893 F.2d 1028 (9th Cir.1990), *withdrawn on other grounds,* 925 F.2d 1181 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 107, 116 L.Ed.2d 77. Once in the room to arrest Reed, Officer Koch had a right to make a protective sweep for his own protection, since he had a reasonable basis for believing that Reed might be armed or have weapons within the room. *Maryland v. Buie,* 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276 (1990). The only issue to be decided is whether, under the circumstances, there was a failure to comply with the requirement that the officers knock and announce their presence before entering the room to serve a warrant.[5] It is undisputed that the officer knocked and waited until Reed opened the door. It is also undisputed that Reed closed the door without admitting the officers or stepping out to be arrested on the threshold. Whether he slammed it closed after recognizing Koch or merely closed the door in order to undo the chain is not controlling; when Reed closed the door, there was sufficient exigency for Koch to dispense with the requirement of announcing that he was a police officer before entering the room.[6] In summary, the undisputed facts establish that the officer serving the warrant had reason to believe that Reed was armed and dangerous, that he was dealing drugs at the Anchor Arms and that he had recognized the officer and closed the door. Under these facts, it was reasonable for the officer to infer that entry had been refused, and that officer safety required that the room be immediately entered. Further delay, while the officers informed the inhabitants that they were police with a warrant, might have lead to an armed confrontation or Reed's escape through a back window. I therefore conclude that the requirement that the officer knock and announce his identity and announce his possession of a warrant before breaking into an occupied hotel room was excused by the presence of exigent circumstances.

5. 18 U.S.C. § 3109 governs the service of search and, by extension, arrest warrants by federal agents. It does not directly apply to service of warrants by state agents, as was the case here. *Miller v. United States,* 357 U.S. 301, 305–06, 78 S.Ct. 1190, 1193–94, 2 L.Ed.2d 1332 (1958) (applying the local law of the District of Columbia). Nevertheless, it has been held that the Fourth Amendment has a knock and announce component. *United States v. Valenzuela,* 596 F.2d 824, 829–30 (9th Cir.1979), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071. Alaska law is virtually identical to federal law with respect to the knock and announce requirement. *See* AS 12.25.100 (arrest warrant) and AS 12.35.040 (search warrant). *Davis v. State,* 525 P.2d 541 (Alaska 1974); *Lockwood v. State,* 591 P.2d 969 (Alaska 1979); *Sandland v. State,* 636 P.2d 1196 (Alaska App.1981). It is therefore not necessary to pursue this distinction further, since the result would be the same whichever law applied. *Valenzuela,* 596 F.2d at 830.

6. *United States v. McCraw,* 920 F.2d 224 (4th Cir.1990), is distinguishable. In that case, the officers entered a hotel room without a warrant or exigent circumstances. In the instant case, there was a warrant. *Miller,* is also distinguishable because in *Miller* it was not contended that the occupant, who shut the door, recognized the officer. It is important to stress that the question in determining whether exigent circumstances are present is what the officers reasonably believed to be true and not what was historically true. *See United States v. Ramirez,* 770 F.2d 1458, 1460 (9th Cir.1985). In this case, the facts known to the officer made his conclusion that he had been refused admittance reasonable. *See Valenzuela,* 596 F.2d at 830; *Lockwood,* 591 P.2d at 970–72. If the officer did not reasonably believe that Reed recognized him, then there would be no substantial compliance, because at a minimum, the officer must either announce that he is a policeman or have reason to believe that the occupant knows the police are at the door. The latter situation is present here. When Koch's knowledge that Reed was customarily armed and might be keeping drugs at the scene is added to his conclusion that Reed recognized him and had slammed the door, i.e. refused entrance, and in addition Koch's fear that Reed might escape out a back window is credited, there were sufficient exigencies to excuse Koch's failure to identify himself as a policeman and indicate that he had a warrant for Reed's arrest before forcing entry to the room.

### C. *Reed's Severance Motion.*

 Reed has moved to sever for trial those counts relating to the incident on January 24, 1992, at the Barratt Inn, and those counts referring to the incidents on May 15, 1992, at the Anchor Arms (Docket No. 37). The counts were properly joined because they involve similar offenses. Fed.R.Crim.P. 8(a). Reed argues that they should be severed to avoid prejudice. Fed. R.Crim.P. 14. The events are relatively near in time. While it would be premature to make a Federal Rule of Evidence 404 determination at this time regarding the cross-admissibility of evidence, it is clear that the Ninth Circuit has been very liberal in permitting the government to introduce past drug activity to prove current drug activity. *See United States v. Adrian,* 978 F.2d 486, 492–93 (9th Cir.1992). I conclude that Reed would not suffer significant prejudice from joint trial of the counts addressing each incident. I therefore adopt the findings and conclusions of the magistrate judge at Docket No. 50.

IT IS THEREFORE ORDERED:

Reed's motions to suppress at Docket Nos. 21 and 38 are DENIED.

Reed's motion to sever at Docket No. 37 is DENIED.