**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Thurman REED, Jr., Defendant–Appellant.**

No. 92–30508.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 5, 1993 *.

Decided Feb. 7, 1994.

---

* The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34–4.

John C. McCarron, Ashburn & Mason, Anchorage, Alaska for the defendant-appellant.

Robert J. Erickson, United States Department of Justice, Washington, D.C., for the plaintiff-appellee.

Before GOODWIN and HUG, Circuit Judges, and McKIBBEN,** District Judge.

## OPINION

GOODWIN, Circuit Judge:

Thurman Reed, Jr. appeals his guilty plea conviction, arguing that the district court erred in denying his motions to suppress. *United States v. Reed,* 810 F.Supp. 1078 (D.Alaska 1992). We agree that the district court erred in suggesting that the Fourth Amendment permits police officers, without a warrant or consent of the occupant, to stand guard while private citizens conduct illegal searches for the purpose of discovering incriminating evidence. This decision conflicts with Ninth Circuit precedent and invites law enforcement officers to circumvent the Fourth Amendment by delegating illegal searches to nongovernment agents.

However, Reed's guilty plea conviction is valid despite this error. Even excising the tainted evidence from the affidavit filed in support of the search warrant, the affidavit establishes probable cause to issue a warrant. The evidence obtained in the later warranted search is, therefore, admissible, and was more than sufficient to sustain Reed's conviction. The district court did not clearly err in rejecting Reed's knock-notice claim.

We affirm Reed's conviction and sentence, but expressly disapprove the district court's published order as inconsistent with circuit law.

** Honorable Howard D. McKibben, United States District Judge for the District of Nevada, sitting by designation.

## I. FACTS

On January 24, 1992, Lewis S. Watson, assistant general manager of the Best Western Barratt Inn ("Barratt Inn") in Anchorage, Alaska, told Anchorage Police he suspected that one of his guests was using his hotel room for drug activities. Reed, the room's occupant, had checked into the hotel several days earlier and had paid for the room in cash each day.[1] According to hotel employees, Reed had refused maid service and received an unusual number of visitors and telephone calls. In addition, an anonymous caller reported that Reed was using the room to sell narcotics. Watson requested that officers be dispatched to the hotel to protect him while he checked the room.

Accompanied by two police officers, Watson knocked on Reed's door, received no answer, and used his master key to enter. Officer Sponholz accompanied him "ten feet" into the room to assure his safety. On entering, Sponholz noticed a bowl of white powder (which he suspected was crack cocaine), a safe, a cellular phone, and two crack pipes in plain view. (Affidavit in Support of Search Warrant). He also saw that the room was clean and in good condition, and that no one was present. Satisfied that Watson was in no danger, he rejoined his partner in the doorway.

Watson also immediately recognized that the room was clean and in good condition. Nonetheless, he proceeded to go through dresser drawers and to open Reed's latched briefcase. Although the officers did not ask him to conduct this search, they stood guard in the doorway and listened as Watson described his finds.

Reed arrived shortly thereafter and refused to consent to a search of his room. Police then obtained and executed a search warrant, uncovering a pistol and drugs in Reed's room. Based on this evidence, they obtained a warrant for Reed's arrest.

In May, 1992, they learned Reed was staying at the Anchor Arms Motel. Dressed in plain clothes, Detective Koch, who had interviewed Reed several months earlier during the Barratt Inn investigation, went to the Anchor Arms Motel to serve the warrant. In response to Koch's knock, Reed opened the door, looked at Koch, and then closed the door. Assuming that Reed had recognized him from their previous meeting, Koch forcibly opened the door and arrested Reed, discovering additional incriminating evidence in Reed's pocket. A subsequent warranted search of the room uncovered additional weapons and contraband.

Before trial, Reed timely moved to suppress the evidence seized at his Barratt Inn and Anchor Arms Motel rooms, arguing (1) that the initial entry into his Barratt Inn room was unlawful and (2) that Detective Koch's forced entry into his Anchor Arms room violated the knock-notice rule. After an evidentiary hearing before a magistrate judge, the district court denied both motions. *Reed*, 810 F.Supp. 1078. Reserving his right to appeal this decision, Reed then pled guilty to two counts of being a felon in possession of a firearm, one count of possession of an unregistered sawed-off shotgun, two counts of using or carrying a firearm in relation to a drug trafficking crime, and two counts of possession of cocaine with intent to distribute. 18 U.S.C. § 922(g), 26 U.S.C. § 5861(d), 18 U.S.C. § 924(c), & 21 U.S.C. § 841(a)(1). On December 2, 1992, the district court sentenced him to a term of 153 months' imprisonment followed by a four-year supervised release. This appeal followed.

## II. THE INITIAL SEARCH OF REED'S BARRATT INN ROOM

The district court found that the initial search of Reed's Barratt Inn room did not violate the Fourth Amendment because it was a private search. We review this legal conclusion de novo, *United States v. Attson*, 900 F.2d 1427, 1429 (9th Cir.), *cert. denied*, 498 U.S. 961, 111 S.Ct. 393, 112 L.Ed.2d 403 (1990), accepting the district court's factual findings unless clearly erroneous, *Id.*, and reject the court's conclusion.

██ As the district court noted, the Fourth Amendment generally does not pro-

---

**1.** Because of previous bad experiences, the hotel considered cash-paying guests a bad risk and required housekeeping staff to enter their rooms on a daily basis.

tect against unreasonable intrusions by private individuals. *Walter v. United States,* 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980), *United States v. Sherwin,* 539 F.2d 1, 5 (9th Cir.1976). The defendant has the burden of showing government action. *United States v. Gumerlock,* 590 F.2d 794 (9th Cir.) (en banc), *cert. denied,* 441 U.S. 948, 99 S.Ct. 2173, 60 L.Ed.2d 1052 (1979).

However, the Fourth Amendment does prohibit unreasonable intrusions by private individuals who are acting as government instruments or agents. *See Coolidge v. New Hampshire,* 403 U.S. 443, 487, 91 S.Ct. 2022, 2048, 29 L.Ed.2d 564 (1971); *United States v. Walther,* 652 F.2d 788, 792–93 (9th Cir.1981). This court has recognized that there exists a "gray area" between the extremes of overt governmental participation in a search and the complete absence of such participation. *Walther,* 652 F.2d at 791. This case falls within the gray area.

Cases which fall within the gray are best resolved on a case by case basis relying on the consistent application of certain general principles. *Id.* The general principles for determining whether a private individual is acting as a governmental instrument or agent for Fourth Amendment purposes have been synthesized into a two part test. *United States v. Miller,* 688 F.2d 652, 657 (9th Cir.1982). According to this test, we must inquire:

> (1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the party performing the search intended to assist law enforcement efforts or further his own ends.

*Id.*

The Barratt Inn search obviously meets the first of these requirements. Officers Rose and Sponholz definitely "knew of and acquiesced" in Watson's search. They were personally present during the search, knew exactly what Watson was doing as he was doing it, and made no attempt to discourage him from examining Reed's personal belongings beyond what was required to protect hotel property. Watson reported his findings to them as he searched.

Thus, the only question is whether Reed has met the second part of the test— did Watson intend to further his own ends, as the government argues, or assist law enforcement efforts? We find, based on Watson's testimony and the circumstances surrounding the search, that Watson intended to help police gather proof that Reed was using his room to deal narcotics. The district court's factual findings to the contrary are clearly erroneous.

Watson testified that he called the police in order to let them know that he felt he had a room and a guest that was "involved in activity they would want to be aware of," and because he suspected Reed was involved in drug activity. He stated that his suspicions about drug dealing played heavily into his reasons for entering the room. Watson had attended a number of Drug Metro unit classes on how to determine when a hotel guest was dealing drugs. These facts suggest that Watson intended to assist the police. *See Walther,* 652 F.2d at 792.

The government contends that Watson entered the room to ensure that hotel property was not damaged and emphasizes that there is no state action if the private individual has a "legitimate independent motivation" for conducting the search. *Id.* at 791–92; *See United States v. Andrini,* 685 F.2d 1094, 1097–98 (9th Cir.1982). Watson testified that it was his idea to go into the room, and that he knew from his previous dealings with the police that he was not an agent of the police department and thus could conduct the search. He said he "wanted to give [the police] enough information so that they knew that there may be things happening in the room that they wanted to take action on."

Moreover, Watson did not stop searching after he had learned the room was in good condition. While the police officers stood in the doorway, he opened closed drawers and a latched briefcase which he knew belonged to Reed. These additional intrusions cannot be justified by any need to protect hotel property and Watson himself admitted he had no such motivation.[2] The district court's opin-

---

2. Watson testified that he was "just snooping" when he opened Reed's briefcase. He also ad-

ion suggests that Watson's interest in preventing criminal activity at the hotel is itself a "legitimate independent motivation" within the *Walther* court's meaning. *See Reed*, 810 F.Supp. at 1079 (noting that "a hotel has a substantial interest in seeing that its premises are not used for illegal activity").

However, the *Walther* court specifically held that a private carrier's interest in preventing criminal activity was not a legitimate independent motivation. 652 F.2d at 792. Moreover, if crime prevention could be an independent private motive, searches by private parties would never trigger Fourth Amendment protection and the second prong of the *Miller* test would be meaningless. This flies in the face of established precedent. In upholding private searches done in the presence of police officers, this court has consistently emphasized that the private searcher had a legitimate motive *other than crime prevention. See, e.g., United States v. Chukwubike*, 956 F.2d 209 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 2288, 119 L.Ed.2d 212 (1992) (emphasizing that the doctor extracted heroin-laden balloons and tested their contents for *medical* reasons).[3] In opening Reed's briefcase and dresser drawer, Watson had no legitimate independent motive within the meaning of these cases; "snooping" is not a legitimate motive and finding evidence of criminal activity is not independent.

The government and the district court emphasize that the police did not request or directly encourage Watson's search. They claim that we cannot find state action because the police were merely incidental, passive participants.[4] The district court notes that "cases make it clear that the mere presence of government agents and their observation of a private person's actions is not significant participation and does not turn a private search into a joint effort." 810 F.Supp. at 1080.[5]

However, in this case, Officer Rose and Sponholz's presence was more than "incidental." Watson would not have felt comfortable searching Reed's room had police officers not been standing guard in the doorway; without them, Reed might have returned and caught Watson examining his possessions. Thus, the officers served a vital purpose: They were lookouts. Under criminal law, the lookout has always been considered a significant participant in a criminal conspiracy. The analogy is instructive here. Officers Rose and Sponholz knew Watson was invading Reed's personal property, knew that this conduct is prohibited by law, and helped him do so anyway.

None of the cases cited by the government or the district court has upheld similar conduct.[6] Rather, this case is governed by

---

mitted he "wanted to give [the police officers in the doorway] enough information."

**3.** *See also* cases cited in notes 5 and 6, *infra*.

**4.** In support of this argument, they cite the *Walther* court's statement that:

> *de minimis* or incidental contacts between the citizen and law enforcement agents prior to or during the course of a search or seizure will not subject the search to fourth amendment scrutiny. The government must be involved either directly as a participant or indirectly as an encourager of the private citizen's actions before we deem the citizen to be an instrument of the state.

652 F.2d at 791. However the *Walther* court specifically found state action where the police had merely accepted the fruits of the private person's previous illegal searches. *Id.* If accepting the fruits of a private party's search 11 times over a 4 year period without paying a reward constitutes indirect encouragement, surely standing in the doorway during a search and

accepting play by play descriptions of its results does so.

**5.** In support of this statement, the Court cites *Andrini*, 685 F.2d at 1097–98; *United States v. Gomez*, 614 F.2d 643 (9th Cir.1979) and *United States v. Ogden*, 485 F.2d 536 (9th Cir.1973), *cert. denied*, 416 U.S. 987, 94 S.Ct. 2392, 40 L.Ed.2d 764 (1974). These cases are inapplicable. In both *Andrini* and *Gomez*, private citizens opened suitcases to determine their owners, not to look for evidence of criminal activity, and we emphasized that the searchers had an independent motivation *other than crime prevention*. In *Ogden*, police were not present during the initial search.

**6.** *Miller* is the most similar. There, the police watched from a position near defendant's land while a theft victim entered to photograph his stolen vehicle which the defendant was offering for sale. However, in *Miller*, the citizen did not search any private property other than that he suspected was his own. Thus, unlike Watson, he had an independent motive (recovering his own property) during the *entire course* of the search.

*Walther*, in which we held that police cannot acquiesce to or indirectly encourage a private person's search for incriminating evidence without implicating the Fourth Amendment. 652 F.2d at 791–792.[7]

Based on the facts of this case and Watson's testimony, we conclude that the warrantless search of Reed's room at the Barratt Inn constituted government action from its inception, and that Watson's alleged "legitimate independent motivation" was a pretext to search for evidence of narcotics trafficking. Thus, the warrantless search of the room at the Barratt Inn violated the Fourth Amendment. The information gathered in that search is inadmissible evidence which should have been suppressed.

### III. THE LATER WARRANTED SEARCH

Reed argues that since the initial police conduct at the Barratt Inn violated his Fourth Amendment rights, all the evidence against him is tainted and must be excluded. We agree that all the observations made by Watson and the officers during the initial Barratt Inn search should not have been included in the affidavit for the search warrant. *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir.1987). However, "information which is received through an illegal source is considered to be cleanly obtained when it arrives through an independent source." *Murray v. United States*, 487 U.S. 533, 538–39, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472

(1987). "The mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant or the evidence seized pursuant to the warrant." *Vasey*, 834 F.2d at 788 (citations omitted). Rather, "[a] reviewing court should excise the tainted evidence and determine whether the remaining untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." *Id.*

■ In the present case, police obtained a warrant based on (1) an anonymous call to the hotel front desk which claimed Reed tried to sell crack to a seventeen-year-old girl; (2) Officer Sponholtz's observation of a bowl of white powder, a safe, a cellular phone and two crack pipes in plain view; (3) Watson's statement that Reed had paid in cash, refused maid service,[8] and received an unusual number of phone calls and visitors; (4) Watson's statement that he saw two crack pipes, a safe, a cellular phone, a bowl of what appeared to be cocaine, and a gun in Reed's briefcase; (5) Reed's previous arrest for drug charges; (6) a canine search of the outside of Reed's car, which indicated drugs were present; and (7) an anonymous Crime Stoppers Line call, in which a person gave a beeper and cellular phone number and claimed that "Red" who matched Reed's description was selling cocaine from room 3317 of the Barratt Inn (which was Reed's room).

Only the evidence obtained during the warrantless search of Reed's room (items 2 and 4) at the Barratt Inn is tainted, and should

---

Moreover, the *Miller* citizen did not open any closed containers and had the defendant's son's permission to be on his property.

None of the other cases cited by the District Court and government are applicable. In *United States v. Snowadzki*, 723 F.2d 1427 (9th Cir.), *cert. denied*, 469 U.S. 839, 105 S.Ct. 140, 83 L.Ed.2d 80 (1984), *United States v. Veatch*, 674 F.2d 1217, 1221 (9th Cir.1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982), and *Gumerlock*, 590 F.2d 794, the police were not personally present during the search. In *Attson*, 900 F.2d 1427 (blood test done for medical reasons), *Andrini*, 685 F.2d 1094 (lost luggage opened to determine owner), and *Gomez*, 614 F.2d 643 (same), the private searcher had a personal motive other than helping the police or preventing crime.

**7.** In *Walther*, an airline employee had provided confidential information to the DEA on eleven

occasions over a four year period without obtaining a reward, but with some hope of obtaining one. Without any DEA agents present and without any direct encouragement from DEA agents, the employee opened and searched a suspicious package and found cocaine. This court held that the cocaine was inadmissible because the DEA agents had acquiesced in the search by obtaining information from the employee on previous occasions and because the employee was motivated to find criminal evidence. The present case involves, if anything, more entanglement between police and a private citizen: police officers were present during the search; Watson reported directly to them as he searched; and Watson was, admittedly, trying to give police information about Reed's alleged drug trafficking.

**8.** This evidence was actually incorrect, as the hotel records indicate that a maid had entered that morning.

be excised from the warrant. The information in the warrant regarding the anonymous call to the hotel, Watson's statement that Reed had paid cash and refused maid service, the unusual amount of phone calls and visitors, the canine search of Reed's car, and the anonymous crime stoppers call is untainted evidence obtained from a source independent of the illegal search. Examining this remaining untainted evidence, we conclude that it is sufficient to provide a neutral magistrate with probable cause to issue a warrant. *Vasey,* 834 F.2d at 788. Thus, the evidence obtained during the subsequent warranted search is admissible, and the arrest warrant is valid.

## IV. REED'S KNOCK–NOTICE CLAIM

Reed also argues that the police violated the knock-notice rule in forcibly entering his Anchor Arms room without identifying themselves as police officers. The existence of exigent circumstances justifying a decision to dispense with knock-notice is a mixed question of law and fact reviewed de novo. *United States v. Mendonsa,* 989 F.2d 366, 370 (9th Cir.1993). The district court's factual findings are reviewed for clear error. *Id.*

Applying this standard, we find that Officer Koch's forcible entry was justified. Both the magistrate judge and district court found that Reed's testimony that he closed the door to unbolt the chain lock was not credible. This factual finding is not clearly erroneous: Reed was far enough away from the door when the officers entered to avoid being hit by the door. Moreover, Officer Koch was not unreasonable in assuming that Reed recognized him when he slammed the door. *United States v. Allende,* 486 F.2d 1351, 1353 (9th Cir.1973), *cert. denied,* 416 U.S. 958, 94 S.Ct. 1973, 40 L.Ed.2d 308 (1974) (officer can infer refusal to reply from silence). The police knew Reed was likely to be armed, that he might flee from a window, and that he had a record of criminal activity. Thus, they did not act unreasonably in forcibly entering Reed's room after he closed the door.

The sentence was within the relevant guidelines, and the judgment is affirmed.