**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. EVE MAZZARELLA, *Defendant-Appellant*. | No. 12-10171 D.C. No. 2:08-cr-00064-RLH-GWF-2 |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. EVE MAZZARELLA, *Defendant-Appellant*. | No. 13-10401 D.C. No. 2:08-cr-00064-RLH-GWF-2 |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. EVE MAZZARELLA, *Defendant-Appellant*. | No. 13-10658 D.C. No. 2:08-cr-00064-RLH-GWF-2 OPINION |

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, Senior District Judge, Presiding

Argued and Submitted
November 17, 2014—San Francisco, California

Filed April 20, 2015

Before: Ronald M. Gould, Paul J. Watford,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Gould

## SUMMARY[*]

### Criminal Law

The panel vacated the district court's orders denying the defendant's motions for a new trial, and remanded for further proceedings, in a case in which the defendant was convicted of twelve felony counts related to a complex mortgage fraud scheme.

After her conviction, the defendant filed two motions for a new trial, contending that the government withheld material exculpatory evidence in violation of *Brady v. Maryland* and violated her right to be free from unreasonable searches under

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the Fourth Amendment. The defendant requested discovery and an evidentiary hearing on these issues.

The panel held that based on the record before the district court, the court erred in concluding that the defendant's rights under *Brady* and the Fourth Amendment had not been violated.

The panel held that the defendant has not shown prejudice based solely on the *Brady* disclosures, first revealed after her trial and sentencing. But the panel remanded the *Brady* issues for the district court to reconsider them on an open record, in conjunction with the additional disclosure with which the defendant sought to augment the record on appeal, the Fourth Amendment issue, and any further impeachment or exculpatory evidence that comes to light from discovery.

The panel held that the district court erred in concluding on the record before it that an employee's copying of documents from the defendant's real estate and investment offices was not a search implicating the Fourth Amendment. The panel wrote that more discovery is required to determine whether an unlawful search occurred and whether there were evidentiary fruits of an unlawful search. The panel wrote that after making these determinations on remand, the district court should consider again the cumulative effect of the impeachment evidence it considered before, and the additional impeachment evidence that the defendant sought to place before this court. The panel wrote that this material must be considered together with any evidence that should have been excluded from trial under the Fourth Amendment to determine whether any of the defendant's convictions must be vacated and a new trial granted.

The panel also held that the district court abused its discretion in denying the defendant's requests for an evidentiary hearing and for discovery. The panel wrote that more findings, which will require reasonable discovery and an evidentiary hearing, are needed to resolve whether there was an immunity agreement in place for a prosecution witness, and whether there was an unlawful search that resulted in tainted evidence being used at trial. The panel wrote that the district court should also consider an additional disclosure with which the defendant sought to supplement the record before this court. The panel rejected the defendant's argument that the district court should have imposed the very detailed discovery guidelines from a 2010 Department of Justice memorandum to federal prosecutors.

The panel addressed other issues in a concurrently filed memorandum disposition.

---

**COUNSEL**

John D. Cline (argued), Law Office of John D. Cline, San Francisco, California; Mark H. Allenbaugh, Law Offices of Mark H. Allenbaugh, Cleveland, Ohio, for Defendant-Appellant.

Daniel G. Bogden, United States Attorney, Elizabeth O. White, Appellate Chief, Peter S. Levitt (argued), Assistant United States Attorney, Las Vegas, Nevada, for Plaintiff-Appellee.

---

**OPINION**

GOULD, Circuit Judge:

Eve Mazzarella was convicted of twelve felony counts related to a complex mortgage fraud scheme. After her conviction, Mazzarella filed two motions for a new trial, contending that the government had withheld material exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and had violated her right to be free from unreasonable searches under the Fourth Amendment. Mazzarella requested discovery and an evidentiary hearing on these issues. The district court denied both motions, and Mazzarella's appeal from those orders is before us.[1] We have jurisdiction under 28 U.S.C. § 1291. We hold that based on the record before the district court, the court erred in concluding that Mazzarella's rights under *Brady* and the Fourth Amendment had not been violated. We also hold that the district court abused its discretion in denying Mazzarella's request for an evidentiary hearing and for discovery. We vacate the district court's orders and remand.

---

[1] Mazzarella also challenges her underlying convictions and sentence directly, raising an ineffective assistance of counsel challenge, a sufficiency of the evidence challenge, and challenges to the district court's evidentiary rulings, jury instructions, and sentencing decisions. We dismiss the ineffective assistance claim and affirm the district court on all the other issues except the sentencing challenge in a concurrently filed memorandum disposition. We do not reach Mazzarella's contentions related to sentencing error, which she may raise again if on remand the district court does not vacate any of her convictions and re-sentence her.

**I**

Mazzarella, a real estate agent and principal of Distinctive Real Estate & Investments ("DREI"), was accused of conspiring with Steven Grimm, Melissa Beecroft, and others to defraud federally insured banks and private citizens.  The scheme involved recruiting straw buyers with excellent credit histories to acquire full or nearly full financing to purchase homes.   The straw buyers' loan applications contained materially false statements related to their income, assets, employment, and intent to use the home as a primary residence.

The homes to be purchased by the straw buyers were offered for sale at distressed prices below fair market value, but the mortgages and the purchase offers were for fair market value.  The difference between the two figures was paid at closing to business entities controlled by Mazzarella and her co-defendants.  The government calls these payments "third party disbursements."  The government charged that defendants created numerous limited liability companies ("LLCs") and caused straw buyers to transfer their interest in the purchased properties to the LLCs in exchange for a fee.  Defendants controlled the bank accounts for those entities and eventually defaulted on mortgage payments on the properties, resulting in significant losses to the lender, while the defendants retained much of the money from the third party disbursements.

The key unlawful component of the scheme was the false information in the loan applications.  Testimony at trial, much of which came from cooperating witnesses, showed that Mazzarella knew that the straw buyers were submitting false information.  One such witness, Skip Young, testified: (1)

that he had engaged in "fraudulent transactions for Eve Mazzarella"; (2) that Mazzarella personally gave misinformation to lenders by suggesting a fake job title at DREI and inflated income for one of her employees who was recruited as a straw buyer; and (3) that Mazzarella developed a plan to create spreadsheets to track which straw buyers applied to which banks after problems arose with buyers seeking loans from the same bank on multiple homes and indicating an intent to reside in each as a primary residence. Another cooperating witness, Shauna Labee, testified that Mazzarella had personally induced her to agree to be a straw buyer and that Mazzarella observed Labee signing blank loan application forms in Mazzarella's office. There was also testimony about Mazzarella's knowing involvement in other aspects of the plan that would have been lawful absent the fraudulent applications.

The jury found Mazzarella guilty of the conspiracy, bank fraud, mail fraud, and wire fraud counts, and Mazzarella appealed.

While the appeal from her convictions and sentence was pending, the district court twice denied motions for a new trial for which Mazzarella moved on the basis of post-trial government disclosures under *Brady v. Maryland*. The government disclosures involved information potentially helpful to Mazzarella about Kim Brown, Alicia Hanna, and Jennifer Wolff, who had all testified as prosecution witnesses in Mazzarella's trial.

After the Mazzarella trial, Brown, one of Mazzarella's employees at DREI who had testified regarding the conspiracy charge and one of the mail fraud charges, testified during the trial of another person connected to the mortgage

fraud scheme. In her testimony at that later trial, she said that while the federal investigation of Mazzarella was pending, she had, at the request of either the FBI or the IRS, copied thousands of pages of documents from the DREI offices and given them to the government. During that related trial, the government's statements and Brown's own testimony indicated that Brown had received an informal promise from the government that she would not be prosecuted if she cooperated. The information about the copied documents and the informal immunity promise had not been disclosed to Mazzarella before or at her trial.

The government also disclosed to Mazzarella information concerning Alicia Hanna, who had testified at Mazzarella's trial about the materiality of the false statements to the lending banks and that one of the defrauded banks was federally insured at the time of the transactions. At the time of trial, Hanna was a former employee of a defrauded lender bank. After trial, the government gave Mazzarella a copy of an email exchange between Hanna and an FBI agent from before Mazzarella's trial. Hanna's email contained a statement indicating that she might wish to work for the FBI one day, and asking the agent to keep an eye out for job openings in the Charlotte field office. That statement may have been a literal hope or a casual joke, but in either event it might have been urged by Mazzarella as a basis to cross-examine Hanna and undercut her credibility.

The district court denied Mazzarella's first motion for a new trial, which was based on the disclosures related to Brown and Hanna. The district court determined that the evidence was not necessarily impeaching, because the government's alleged promise to Brown that she had nothing to worry about if she cooperated was in response to a

question asked by another witness cooperating in the investigation against Mazzarella, and could not reasonably be construed as a promise to Brown specifically. Also, any agreement would not impeach her because Brown had testified that she initially contacted the FBI out of a desire to do the right thing, belying the notion that her cooperation was motivated by a desire to avoid prosecution. The district court deemed the email from Hanna innocuous and unlikely to serve as impeachment evidence. The district court further ruled that even if the evidence was impeaching, there was no prejudice because the jury would likely have found Brown and Hanna credible despite any impeachment evidence. Also there was substantial other evidence of Mazzarella's guilt, and Hanna's testimony had been verified by independent documentation and the testimony of several other witnesses. The district court additionally ruled that Brown was not a government actor and that her copying of documents did not implicate the Fourth Amendment, and further that there was no evidence that any copied documents were given to the government, or that any were used by the government at trial. Mazzarella timely appealed the district court's order denying her motion.

Later, the government made yet another disclosure to Mazzarella. Jennifer Wolff, who had testified against Mazzarella, testified on cross-examination during the trial of another person in the scheme that she understood that she would not be prosecuted in return for testifying. The government told Mazzarella that it was aware of no such promise.

Mazzarella moved a second time for a new trial based on the *Brady* disclosures. The district court concluded that the notion that Wolff was promised immunity in exchange for

testimony against Mazzarella was "tenuous at best," because it was unclear even from Wolff's testimony whether she was referring to an agreement that was for her testimony in Mazzarella's trial, or only in the later trial of Mazzarella's co-schemer. Moreover, the government had filed an affidavit explaining that Wolff's belief arose from a misunderstanding and that she was never actually promised immunity. Once again, the district court concluded that even if there had been an immunity agreement and even alongside the earlier disclosures, the additional evidence against Mazzarella was so substantial that there was no prejudice that would undermine confidence in the verdict.[2]

## II

We review *de novo* a district court's denial of a new trial motion based on a *Brady* claim, as well as the issue of materiality under *Brady*. *United States v. Sedaghaty*, 728 F.3d 885, 899–900 (9th Cir. 2013).

We review *de novo* a district court's legal conclusion that a search did not violate the Fourth Amendment because it was private. *United States v. Reed*, 15 F.3d 928, 930 (9th Cir. 1994).

---

[2] Before oral argument in this case, Mazzarella filed a motion to supplement the record with the details of another *Brady* disclosure. We deny that motion in an order filed simultaneously with this opinion. Even in combination with the other disclosures on the existing record, we would not reverse the district court. Rather, as we explain below, we vacate the district court's orders denying Mazzarella's new trial motions, and remand for further proceedings. The district court should consider the additional disclosure in the first instance on remand, and assess any cumulative effect of the combined *Brady* disclosures and Fourth Amendment issues.

We review discovery rulings for an abuse of discretion. *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013). A denial of an evidentiary hearing is also reviewed for an abuse of discretion. *United States v. Olsen*, 704 F.3d 1172, 1178 (9th Cir.), *reh'g en banc denied*, 737 F.3d 625 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 2711 (2014).

### III

Mazzarella argues that the government's failure to disclose the Brown immunity agreement and document copying, the Hanna email about job openings at the FBI, and the possible immunity agreement for Wolff violated *Brady*. Mazzarella also argues that Brown's copying documents from the DREI offices and turning them over to the government violated her rights under the Fourth Amendment. Finally, Mazzarella contends that the district court abused its discretion by not granting discovery or holding an evidentiary hearing on those issues. We agree with the last contention. We conclude that we cannot vacate any of Mazzarella's convictions on the present record. But the district court erred in denying her motions for a new trial without correctly analyzing the Fourth Amendment issue and then deciding whether any evidence submitted was the fruit of an illegal search, and then considering in light of those decisions, whether there was prejudice from the challenged failures to disclose. We vacate the challenged orders and remand so that the district court, after allowing reasonable discovery and conducting an evidentiary hearing, may decide on an open record whether to grant Mazzarella's request for a new trial.

A. *Mazzarella has not shown prejudice based on the* Brady *disclosures alone*

The Fifth Amendment's Due Process Clause requires the government to produce exculpatory information to the defense. *Brady*, 373 U.S. at 86–87. This includes information that may be used to impeach prosecution witnesses. *Giglio v. United States*, 405 U.S. 150, 152–54 (1972). A prosecutor has a duty under *Brady* to learn of and disclose evidence known to others acting on the government's behalf, including the police. *See Kyles v. Whitley*, 514 U.S. 419, 432, 437 (1995).

In the post-trial context, a *Brady* violation has three components: (1) the information must be favorable to the defense; (2) it must not have been disclosed by the government before or at trial; and (3) there must have been resulting prejudice. *See United States v. Wilkes*, 662 F.3d 524, 535 (9th Cir. 2011). Prejudice ensues "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Kohring*, 637 F.3d 895, 902 (9th Cir. 2011) (internal quotation mark omitted). "A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial." *Olsen*, 704 F.3d at 1183 (internal quotation marks omitted). "The need for disclosure is particularly acute where the government presents witnesses who have been granted immunity from prosecution in exchange for their testimony. We have previously recognized that criminals who are rewarded by the government for their testimony are inherently untrustworthy, and their use triggers an obligation to disclose material information to protect the defendant from being the victim of a perfidious bargain

between the state and its witness." *Carriger v. Stewart*, 132 F.3d 463, 479 (9th Cir. 1997) (en banc).

We conclude that the Brown and Hanna disclosures, first revealed after Mazzarella's trial and sentencing, were favorable to Mazzarella and that to the extent the district court ruled otherwise, that conclusion was error. As to Brown, the district court reasoned that a prosecutor's statement to two people, one of whom was Brown, that there was "nothing to worry about" if the truth were told could not reasonably be construed as a promise of immunity to Brown specifically. But that conclusion is belied by the government's own statements: in the later trial at which Brown testified, the same prosecutor who prosecuted Mazzarella told the court that he had promised Brown that she would not be prosecuted. The district court's analysis of the Brown disclosure collapsed the distinction between the favorable prong and the issue of prejudice by concluding that Brown's testimony that she had approached the FBI out of a desire to do the right thing meant the immunity agreement was not favorable. The same is true of the district court's characterization of Hanna's statements about jobs at the FBI as innocuous. It is potential impeachment evidence to suggest that a government witness has a bias—here, seeking government employment—that might color the witness's testimony.

The district court determined that the notion that Wolff had an immunity agreement in place was "tenuous at best," but did not hold an evidentiary hearing to settle the matter, nor permit discovery on the issue. In light of our conclusions on the Fourth Amendment issue, which we discuss below, this was an abuse of discretion.

On the record as it now stands, we agree with the district court's conclusion that even assuming all of the disclosed evidence was favorable impeachment evidence, no prejudice resulted from the government's not disclosing the impeachment evidence. More than 50 witnesses testified, and there were more than 1300 exhibits introduced at trial. Skip Young testified extensively about Mazzarella's knowledge of, and involvement in, the use of false information in the loan applications. Shauna Labee offered testimony that she had signed blank loan applications in Mazzarella's presence and at Mazzarella's urging. While both Young and Labee were co-schemers testifying in exchange for deals, their detailed testimony, coupled with the ample evidence of Mazzarella's involvement in all the other aspects of the business plan, suggests that even after accounting for the disclosures, on the record before us, there is not a fair probability that a jury would have reached a contrary result. The strength of the prosecution's case, coupled with the relative weakness of the proffered impeachment evidence, leads us to conclude that there was no prejudice.[3]

But we must remand the *Brady* issues for the district court to reconsider them on an open record, in conjunction with the additional disclosure with which Mazzarella sought to augment the record on appeal, the Fourth Amendment issue discussed below, and any further impeachment or exculpatory evidence that comes to light from discovery. If the district court again denies the new trial motion, it should provide a

---

[3] There is some uncertainty, on the record before us, about whether Mazzarella's conviction for mail fraud under Count 11 could stand if, in light of the immunity agreement, the jury had wholly discounted Brown's testimony, and also about how Wolff's testimony merely duplicated or corroborated other evidence at trial.

specific explanation for its conclusion that confidence in the verdict is not undermined.

###### B. *The district court erred in concluding on the record before it that there was no search implicating the Fourth Amendment*

One or more of Mazzarella's convictions may need to be vacated if there was evidence admitted at trial that should have been suppressed as the fruit of an unlawful search. But more discovery is required to determine whether an unlawful search occurred and whether there were evidentiary fruits of an unlawful search. The district court should make those determinations in the first instance on remand.

We have held that whether a private individual acts as a government agent for Fourth Amendment purposes requires an inquiry into whether the government knew of or acquiesced in the intrusive conduct, and whether the party performing the search intended to assist law enforcement efforts or further his or her own ends. *United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1994). In *Reed*, a hotel manager called the police to report suspected drug activity by one of the hotel's guests and asked for police protection as he searched the guest's room, which the police provided. *Id.* We held that the search fell within the Fourth Amendment's ambit. *Id.* at 932. We also rejected crime prevention as an independent private motive, reasoning that if crime prevention were deemed a private motive, searches by private parties would never implicate the Fourth Amendment. *Id.*

If an unwarranted search did occur—and there is no dispute that Brown's copying was not pursuant to a warrant—our precedents establish that such a search would

generally be unreasonable, absent an exception such as valid consent. *See United States v. Ziegler*, 474 F.3d 1184, 1191 (9th Cir. 2007) (upholding search of employee's workplace computer where employer gave consent). A third party with "common authority over or other sufficient relationship to the premises or effects sought to be inspected" may consent to a government search without the search violating the Fourth Amendment. *Id.*; *see also United States v. Kim*, 105 F.3d 1579, 1582 (9th Cir. 1997) (holding that consent may be given by person with actual or apparent authority to do so, and that defendant, by authorizing associate to rent storage unit for defendant in associate's name, assumed the risk that associate would consent to a search of the unit).

Here, Brown testified at another trial that after she approached the authorities during the Mazzarella investigation, either the FBI or the IRS told her to get as much documentation from DREI as she could, and that she did so. She testified that she agreed she would gather documents, and made "a very huge stack" of copies of documents without Mazzarella's knowledge, and gave it to "the proper people to give it to." There was also testimony from that same trial that the investigating FBI agent who investigated Mazzarella testified that he did not recall receiving any documents taken from DREI.

The district court concluded that: (1) the Fourth Amendment was not implicated because Brown testified that she was motivated by a desire to do the right thing; (2) there was no evidence that any documents were given to the government; and (3) there was no evidence that any documents that were turned over were used by the government at trial. But we cannot affirm any of the district court's conclusions on this issue on the present record.

First, the desire to "do the right thing" that the district court identified here is indistinguishable from the crime prevention motive that we rejected in *Reed*. Also, per Brown's testimony, the government did not merely acquiesce but asked Brown to gather evidence. If Brown's testimony is accurate, her copying may have implicated the Fourth Amendment. We cannot say on the present record whether Brown had actual or apparent authority to turn over the documents to the government. Testimony from the related trial from a DREI employee who apparently assisted Brown with the copying that "Eve [Mazzarella] would have gone insane if she knew that we were . . . copying old investor files," at least suggests that Brown lacked actual authority to copy and disclose the documents. But there is no further evidence on this issue in the record, no evidence at all related to Brown's apparent authority or the other DREI employee's apparent authority, and the district court made no findings on the issue.

Second, the district court's conclusion that there is no evidence that documents were actually disclosed to the government is not supported by the record. That finding is contradicted by Brown's sworn testimony that she turned over her copies to the appropriate people. While one FBI agent testified that he did not recall receiving any copied documents from Brown, further discovery is necessary to resolve the issue, and the district court should make findings of fact on this issue.

Third, the government's declaration that none of the exhibits introduced at trial were from documents obtained by Brown, even if true, does not resolve the potential Fourth Amendment problem. The exclusionary rule bars the introduction of "derivative evidence, both tangible and

testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint." *Murray v. United States*, 487 U.S. 533, 536–37 (1988) (internal quotation marks omitted).  After determining whether a search within the meaning of the Fourth Amendment occurred and whether any documents from that search were given to the government, the district court must also determine what trial evidence, if any, was the fruit of an unlawful search such that it should have been suppressed.

After making these determinations, the district court should consider again the cumulative effect of the impeachment evidence it considered before, and the additional impeachment evidence that Mazzarella sought to place before this court.  This material must be considered together with any evidence that should have been excluded from trial under the Fourth Amendment to determine whether any of Mazzarella's convictions must be vacated and a new trial granted.

### C. The district court abused its discretion in denying Mazzarella's requests for discovery and an evidentiary hearing

Mazzarella contends that the district court abused its discretion by not permitting discovery or holding an evidentiary hearing on the *Brady* and Fourth Amendment issues.  We agree to an extent.  More findings, which will require reasonable discovery and an evidentiary hearing, are needed to resolve whether there was an immunity agreement in place for Wolff, and whether there was an unlawful search of the DREI offices that resulted in tainted evidence being

used at trial. Finally, the district court should also consider the additional disclosure with which Mazzarella sought to supplement the record before us.

Having concluded that the district court abused its discretion in denying an evidentiary hearing and not permitting any discovery on these issues, we will not as an appellate panel impose unduly onerous specifications related to the scope of discovery. We reject Mazzarella's argument that the district court should have imposed the very detailed discovery guidelines from a 2010 Department of Justice memorandum to federal prosecutors. *See* David W. Ogden, Dep. Att'y General, *Memorandum for Department Prosecutors: Guidance for Prosecutors Regarding Criminal Discovery* (Jan. 4, 2010). The Ogden Memorandum says that it "is not intended to have the force of law or to create or confer any rights, privileges, or benefits." *Id.* at 1. Mazzarella has pointed to no authority suggesting that an appellate court can or should impose such specific requirements on a question governed by the district court's discretion, especially based on a document only meant to provide policy guidance. *Cf. United States v. Canori*, 737 F.3d 181, 183–85 (2d Cir. 2013) (rejecting an argument that another Justice Department memorandum, which gave guidance for federal prosecutors in states that have decriminalized marijuana, in any way prevented those prosecutors from enforcing federal drug laws); *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1152 (D.C. Cir. 2006) (as amended) (rejecting argument that a contempt finding against a journalist for not disclosing a source had to be reversed because the government did not comply with the procedures set out in 28 C.F.R. § 50.10, governing subpoenas for reporters, in part because the government guidelines state that they do not create an enforceable right for any person).

\* \* \*

We vacate the orders denying Mazzarella's motions for a new trial. On remand, the district court should authorize appropriate discovery and hold an evidentiary hearing to determine whether an unlawful search occurred and, if so, what evidence was obtained by the government or derived from the unlawful search. In addition, the district court should determine whether Wolff was promised immunity in exchange for testimony against Mazzarella. Finally, based on the result of these determinations, the district court should consider anew whether the cumulative effect of the *Brady* disclosures and the suppression of unlawfully obtained evidence requires vacating Mazzarella's convictions and ordering a new trial.

There is a serious need for constant vigilance in both prosecutors' offices and federal courtrooms to safeguard individuals' Fifth Amendment rights as explained in *Brady* and *Giglio*. This is no less true of the Fourth Amendment, and the important individual interests in privacy and personal security that it protects.

Those charged with crime deserve a fair shake from government prosecutors. The prosecutors' duty is not to gain conviction at any cost but rather to help ensure that justice is done. Prosecutors have a critical role in the criminal justice system. Of course, we expect prosecutors to be able and aggressive advocates, in the best traditions of the American bar, and they may enlist many of the tools used by private advocates as they put the government's case in its most appealing form. But our system maintains important safeguards of individual rights and this constrains the actions of the government. Prosecutors cannot withhold from

disclosure information that it has that is favorable to the accused, nor knowingly present false testimony.

Similar principles constrain law enforcement. Although we want vigorous enforcement of the law, we insist that law enforcement honor the constitutional rights of those suspected of crime. We place limits on searches for evidence to preserve individual privacy, with the Constitution generally requiring probable cause for searches of a private business and a warrant preceding the search except in defined circumstances. We impose a broad mandate for fair procedure implemented through many particular requirements.

On remand, the district court should permit discovery suitable to ensure that the prosecutors in this case have respected Mazzarella's constitutional rights. If it is shown that they have not, and that those failures were neither harmless nor immaterial under our court's precedents, Mazzarella is entitled to a new trial on one or more of the charges against her.

## IV

For the foregoing reasons, we vacate the district court's orders denying Mazzarella's motions for a new trial. This case is remanded for further proceedings consistent with this opinion.

**VACATED and REMANDED.**